```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF ALABAMA
                       NORTHERN DIVISION


REBECCA HETHCOX,                   :
                                   :
     Plaintiff,                    :
                                   :
vs.                                :
                                   :    CIVIL ACTION 14-0274-M
CAROLYN W. COLVIN,                 :
Social Security Commissioner,      :
                                   :
     Defendant.                    :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 12). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 20). Oral argument was waived in this action (Doc. 21). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance."  *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-seven years old, had completed an eighth-grade education (Tr. 79), and had previous work experience as a cashier (Tr. 91).  In claiming benefits, Plaintiff alleges disability due to moderate intellectual disability, arthritis, degenerative disc disease of the cervical spine with chronic neck pain status post anterior fusion, fibromyalgia, myofascial pain syndrome, bursitis of the knees and hips, tendonitis of the shoulders, gastroesophageal reflux disease, episode of lumbar L5 strain, episode of prurigo nodularis, pain disorder with depression and anxiety, and obsessive compulsive personality (Doc. 13).

The Plaintiff filed protective applications for disability benefits and SSI on October 25, 2010 (Tr. 160-70; *see also* Tr. 61).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Hethcox could

perform her past work as a cashier as well as other specified light jobs (Tr. 61-71).  Plaintiff requested review of the hearing decision (Tr. 32) by the Appeals Council, but it was denied (Tr. 1-6).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Hethcox alleges that:  (1) The ALJ's residual functional capacity (hereinafter *RFC*) is vague and insufficient; (2) the ALJ did not fully develop the record; (3) the Appeals Council did not properly review evidence submitted to it; and (4) the Appeals Council erred in not finding that she meets the requirements of Listing 12.05C (Doc. 12).  Defendant has responded to—and denies—these claims (Doc. 16).  The relevant record evidence will now be summarized.[1]

On January 12, 2010, Dr. Walid W. Freij, Neurologist, examined Hethcox for pain in her fingers, especially on the right; there was swelling and redness in the fingers on the right side, though she was tender all over, basically (Tr. 260-61).  An electrodiagnostic study revealed evidence of left lateral plantar neuropathy without evidence of denervation; the diagnosis was arthritis, fibromyalgia, and peripheral

---

[1]The Court notes that even though the ALJ stated that Plaintiff's alleged disability date was January 1, 2010 (Tr. 61), Hethcox asserted the date was May 1, 2010 (Tr. 160, 164; *see also* Doc. 13).  As such, the Court will herein review only the evidence after January 1, 2010 that is relevant to the claims brought in this action.

3

neuropathy.  Freij continued her prescriptions for Lyrica[2] and Naproxen[3] and added Cymbalta[4] to her regimen and told her to return in six months.

On March 25, 2010, Hethcox underwent an MRI of the cervical spine that showed prominent diffuse disk protrusion, particularly severe on the left at C6-7, causing both neuroforamen stenosis on the left and diffuse spinal stenosis (Tr. 281).  On April 14, Plaintiff was seen at the Selma Doctors Clinic for neck pain; the exam was essentially normal, though a mitral heart click was heard (Tr. 267).  Trazodone,[5] Ultracet,[6] and Soma[7] were prescribed; Savella[8] was continued.

On May 7, Hethcox underwent a C6-C7 anterior cervical discectomy for left radiculopathy, severe cervical stenosis with cervical myelopathy (Tr. 319-21; *see generally* Tr. 303-21).  On

---

[2]*Lyrica* is used for the management of neuropathic pain. *Physician's Desk Reference* 2517 (62nd ed. 2008).

[3]*Naproxyn*, "is a nonsteroidal anti-inflammatory drug with analgesic and antipyretic properties" used, *inter alia*, for the relief of mild to moderate pain.  *Physician's Desk Reference* 2458 (52nd ed. 1998).

[4]Cymbalta is used in the treatment of major depressive disorder. *Physician's Desk Reference* 1791-93 (62nd ed. 2008).

[5]*Trazodone* is used for the treatment of depression.  *Physician's Desk Reference* 518 (52nd ed. 1998).

[6]*Ultracet* is made up of acetaminophen and tramadol and is used for the short-term (5 days or less) management of pain.  *See* http://health.yahoo.com/drug/d04766A1#d04766a1-whatis

[7]*Soma* is a muscle relaxer used "for the relief of discomfort associated with acute, painful musculoskeletal conditions," the effects of which last four-to-six hours.  *Physician's Desk Reference* 2968 (52nd ed. 1998).

[8]*Savella* is used in the treatment of fibromyalgia.  *See* http://www.drugs.com/savella.html

July 16, 2010, fusion changes were noted in an MRI of the cervical spine; there was no apparent spinal stenosis (Tr. 315); an MRI of the lumbar spine demonstrated mild desiccation at L4-L5 with mild facet degenerative changes in the lower lumbar spine (Tr. 314).  On September 21, Dr. Walter G. Haynes, III, Neurosurgeon, examined Hethcox for complaints of swelling in the left side of her neck, numbness in her left arm, and tingling between her shoulder blades; radiographs revealed "ongoing fusion at C6-7 which [was] quite surprising considering [she was] still continuing her tobacco habit" after having been urged to quit (Tr. 304).  The Doctor noted some palpable paravertebral spasm on the left side of her neck as well as a possible lima anteriorly on the left side; Plaintiff had 5/5 strength bilaterally in her upper extremity muscles groups and her reflexes were intact and symmetrical.

On December 29, 2010, Gregory Parker, a non-examining physician with the Social Security Administration (hereinafter *SSA*), completed a physical residual functional capacity (hereinafter *RFC*) assessment, finding that Hethcox was capable of lifting and carrying twenty pounds occasionally and ten pounds frequently (Tr. 322-29).  She was capable of sitting for six and standing and/or walking for about six hours during an eight-hour workday; she would have no problem with pushing and/or pulling of foot or hand controls.  Plaintiff had no

5

postural, manipulative, visual, communicative, or environmental limitations.

On January 24, 2011, Psychologist Donald W. Blanton examined Hethcox, finding her thoughts and conversation logical, associations intact, and affect flat, but appropriate (Tr. 331-33). Plaintiff complained of anxiety and restlessness; she was depressed. Blanton noted that "[s]he appeared to have a slight psychomotor retardation" (Tr. 332); intelligence was estimated to be below average. Hethcox was obsessed with her pain. Insight was limited and judgment was fair. The Psychologist's impression was pain disorder with anxiety and depression, obsessive compulsive personality, orthopedic problems and a history of burns, financial problems, and a GAF of 60.[9]

On February 17, 2011, Joanna Koulianos, Ph.D., a non-examining Psychologist with the SSA, completed a Psychiatric Review Technique form that indicated that Hethcox suffered from depression, anxiety, a pain disorder, and obsessive compulsive personality (Tr. 334-47). The Psychologist suggested that Plaintiff suffered mild restriction of activities of daily living, moderate difficulties in maintaining social functioning,

---

[9]**Error! Main Document Only.**"A GAF score between 51-60 indicates "moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed. 1994).

6

and moderate difficulties in maintaining concentration, persistence, or pace.  Koulianos also completed a mental RFC in which she indicated that Hethcox was moderately limited in her ability to do the following:  understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting (Tr. 348-51).  The Psychologist went on to find that Plaintiff was able to understand, remember, and carry out short and simple instructions; she could concentrate and attend for reasonable periods of time.  Hethcox's contact with the general public should not be a regular job duty.  Corrective action from her supervisor should be simple and supportive.  Finally, Koulianos noted that any changes in the work environment or work expectations should be introduced gradually.

On March 8, 2011, Plaintiff was examined at the Selma Doctors Clinic for complaints of burning in her legs; the examination was normal though there was neuropathy in the legs (Tr. 367).  Range of Motion (hereinafter *ROM*) measurements were normal; no tenderness was noted.  Toradol[10] was prescribed.  On March 29, Hethcox was seen for back pain; the examination was

---

[10]*Toradol* is prescribed for short term (five days or less) management of moderately severe acute pain that requires analgesia at the opioid level. *Physician's Desk Reference* 2507-10 (52nd ed. 1998).

7

normal (Tr. 366).

On May 19, 2011, Dr. Freij examined Hethcox and found tenderness over all the muscles of the shoulder and back; strength was 5/5 (Tr. 352-54). His notes reported "a rheumatologist who confirmed the diagnosis of fibromyalgia and he thought she had shoulder pain also related to supraspinatous tendinitis and knee pain because of bursitis and hip pain because of trochanteric bursitis;" the Rheumatologist had also strongly advised Plaintiff to quit smoking, but she had not. He prescribed Lortab.[11] On July 20, 2011, Hethcox told Dr. Freij that her medications were helping her feel better; his examination revealed crepitation in the left and right knee (Tr. 353). Motor power was 5/5; Nexium was added to her daily prescriptions for Gastroesophageal reflux disease. On November 29, the Neurosurgeon examined Plaintiff for swelling over the Trapezius muscle on the left; he increased her medications and prescribed a Butrans[12] patch (Tr. 356).

On February 23, 2012, Plaintiff was seen at the Selma Doctors Clinic for complaints of chronic back pain; though the exam was normal, lumbosacral strain was diagnosed (Tr. 361).

---

[11]**Error! Main Document Only.**  *Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

[12]A Butrans skin patch is an opioid pain medication used to treat moderate to severe chronic pain around the clock.  *See* http://www.drugs.com/butrans.html

8

On August 14, 2012, Dr. Oluyinka S. Adediji conducted a musculoskeletal examination of Hethcox who was in no apparent distress (Tr. 374-85).  The Doctor noted normal ROM throughout though she had multiple tender spots on both sides of the spine, shoulders, hips, arms, and legs; hand grip strength and dexterity were normal.  Adediji's assessment was chronic neck pain and myofascial pain syndrome.  The Doctor also completed a physical capacities evaluation indicating that Plaintiff was capable of lifting and carrying ten pounds continuously, twenty pounds frequently, and fifty pounds occasionally; she could sit two, stand one, and walk one hour at a time and could sit for six, stand for three, and walk for three hours during an eight-hour day.  Hethcox was capable of using either hand to reach, handle finger, feel, and push and pull frequently; she could also use both feet for foot controls frequently.  Plaintiff could climb, balance, stoop, kneel, crouch, and crawl occasionally; she could work at unprotected heights, be around moving mechanical parts, operate a motor vehicle, be exposed to humidity and wetness, dust, odors, fumes, and pulmonary irritants occasionally, but could never be exposed to extreme cold or heat or vibrations.  This concludes the summary of the evidence before the ALJ at the time of his decision.

In bringing this action, Plaintiff first claims that the ALJ's RFC determination is vague and insufficient (Doc. 12, pp.

9

2-3).  The single specified objection for this claim is that the ALJ did not identify what he meant in finding that she was "able to concentrate and attend for reasonable periods of time" (Doc. 12, p. 2; *cf.* Tr. 65).  The Court notes that the ALJ is responsible for determining a claimant's RFC.  20 C.F.R. § 404.1546 (2014).  That decision cannot be based on "sit and squirm" jurisprudence.  *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).  However, the Court also notes that the social security regulations state that Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination.  20 C.F.R. § 404.1545(a)(3).

The ALJ's determination was that Hethcox had the RFC to perform light work.  The determination, more specifically, was as follows:

> The claimant can lift and carry twenty pounds occasionally, and ten pounds frequently.  She can sit for two hours at a time for a total of six hours in an eight-hour workday.  She can stand and walk for one hour at a time for a total of three hours each in an eight-hour workday.  She can frequently use both hands for reaching, handling, fingering, feeling, and pushing and pulling. She can operate foot controls frequently bilaterally.  She can occasionally climb stairs and ramps, ladders, and scaffolds, and balance, stoop, kneel, crouch, and crawl.  The claimant does not require the use of a cane to ambulate (Exhibit 12F Dr. Adediji fully credible except that he allows for medium work and I have limited her to light work).  The

10

> claimant [] no limitation in her ability to
> understand, remember, and carry out short
> and simple instructions, or to perform
> activities within a schedule.  She is able
> to concentrate and attend for reasonable
> periods of time.  Her contact with the
> general public should not be a usual job
> duty, and corrective actions from a
> supervisor should be offered in a simple and
> supportive manner.  Changes in the work
> environment or work expectations should be
> introduced gradually (Exhibit 7F Dr.
> Koulianos fully credible).

(Tr. 65).

The ALJ's finding, in the sentence before the one about which Plaintiff complains, is that Hethcox has unlimited "ability to understand, remember, and carry out short and simple instructions, or to perform activities within a schedule" (Tr. 65).  The ALJ's statement that she can "concentrate and attend for reasonable periods of time" is an extension of the preceding sentence.  In any event, Plaintiff has brought forth no evidence to demonstrate any limitation in her ability to concentrate and stay on task.  The Court finds no merit in Plaintiff's claim.

Hethcox next claims that the ALJ did not fully develop the record.  More specifically, Plaintiff asserts that the evidentiary record should have been expanded to include evidence regarding her past relevant work duties as a cashier and her cognitive functioning (Doc. 12, pp. 3-6).  The Eleventh Circuit Court of Appeals has required that "a full and fair record" be

11

developed by the Administrative Law Judge even if the claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

In bringing this claim, Hethcox first asserts that the ALJ did not gather evidence regarding the job duties she performed as a cashier (Doc. 12, p. 3). She points to the Vocational Expert's testimony that cashier work was light and semi-skilled and was defined in the *Dictionary of Occupational Titles* (hereinafter *DOT*) at section 211.462-014.[13] Plaintiff objects to the ALJ's finding that she can do her past cashier work as the DOT includes among those duties "balancing the cash register" when there is no evidence that she ever did that (Doc. 12, p. 3).

The Court notes that the DOT actually says that cashiers "[m]ay record daily transaction amounts from cash register to balance cash drawer." It does not say that this duty must be done to be considered a cashier.

In any event, the Court understands the ALJ's finding to be that she can now still perform her past work as she actually performed it then. The Court further finds that the ALJ's RFC determination would accommodate Hethcox's ability to perform all of the tasks involved with the DOT listing, even if she has to learn them. Ultimately, though, the ALJ found Plaintiff capable

---

[13]*See* http://www.occupationalinfo.org/21/211462014.html

12

of performing other jobs existing in the national economy, including garment folder, marker, ticket seller, production assembler, and packer (Tr. 71). Hethcox has not objected to the ALJ's finding concerning these jobs. So, at most, the Court finds that the ALJ has committed harmless error and that remand of this action would be inappropriate. *See Reeves v. Heckler*, 734 F.2d 519, 526 n.3 (11th Cir. 1984).

The second component of Plaintiff's claim is that the ALJ did not properly develop the record regarding her cognitive functioning. She points to her low level of education (ninth grade), her own testimony of limitation, her semi-skilled work history, and Psychologist Blanton's findings that she had below-average intelligence and memory, limited insight, and fair judgment as reasons why the ALJ should have sought more evidence regarding her mental abilities (Doc. 12, pp. 4-5).

This claim is of no merit. Though Blanton's report found Hethcox to have below-average intelligence, he does not indicate any inability to work. The ALJ's RFC fairly recognizes Plaintiff's mental limitations, requiring that she perform only semi-skilled work. As for Plaintiff's own testimony of limitation, the ALJ rejected that evidence, finding it not credible (Tr. 68); Hethcox has not challenged that finding in this action.

The Court finds Plaintiff's claim that the ALJ did not

13

properly develop the record is without merit.

The next two claims raised are that the Appeals Council did not properly review the evidence submitted to it and erred in not finding that Hethcox meets the requirements of Listing 12.05C (Doc. 12, pp. 6-9).  These claims are based on evidence submitted to the Appeals Council after the ALJ's determination had been entered.

Before examining that evidence, the Court notes that "[a] reviewing court is limited to [the certified] record [of all of the evidence formally considered by the Secretary] in examining the evidence."  *Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir. 1985).  However, "new evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review."  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994).  Under *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1264 (11th Cir. 2007), district courts are instructed to consider, if such a claim is made, whether the Appeals Council properly considered the newly-submitted evidence in light of the ALJ's decision.  To make that determination, the Court considers whether the claimant "establish[ed] that:  (1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and

14

probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level." *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

The newly-submitted evidence is as follows: educational records (Tr. 245-53); records from Dr. Freij dated May 29 to December 21, 2012 (Tr. 386-91); and examination results from Psychologist Blanton from January 9, 2013 (Tr. 392-95). In her argument before the Court, Plaintiff only references the school records and Blanton's latest report (Doc. 12, pp. 6-9). The Court will review those records under *Caulder*.

The educational records date from 1980 to 1981 and demonstrate that Hethcox was not a good student, had failing grades, and received some special education classes (Tr. 243-53). This evidence fails to meet *Caulder*'s third prong, however, because there has been no showing of good cause why this evidence was not submitted to the ALJ.

Blanton's report of January 9, 2013 included Hethcox's taking the Wechsler Adult Intelligence Scale, Fourth Edition, on which she had a Full Scale IQ score of 67 (Tr. 392-95). Blanton noted that this placed her in the mild range of mental retardation and found that this was a "valid assessment of her current level of intellectual functioning" (Tr. 393). He did go

15

on to say, though, that he thought this was a lifelong condition (Tr. 394).

The Court notes that an IQ score of 67 is one requirement for meeting Listing 12.05C.  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C (2014).  Hethcox has argued that the IQ score, coupled with the educational records, demonstrate a lifelong condition that should have been considered by the Appeals Council (Doc. 12, pp. 6-9).

However, the Court notes that transcript records from the evidentiary hearing demonstrate that neither Plaintiff nor her attorney claimed mental retardation in discussing her impairments (*see* Tr. 79-91).  The Court further notes that Dr. Blanton in his first examination found Hethcox to have below-average intelligence (Tr. 332-33); this finding does not lead to a conclusions of mental retardation.  Finally, the Court notes that there is no evidence of mental retardation presented in the evidence reviewed by the ALJ.  As such, the Court finds that this evidence fails the second *Caulder* prong in that there is not a reasonable possibility that it would change the administrative result.  The Court finds no merit in Plaintiff's claims that the Appeals Council did not properly review the evidence submitted to it and erred in not finding that Hethcox meets the requirements of Listing 12.05C.

Hethcox has raised four different claims in bringing

this action.  All are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), AND that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 9th day of February, 2015.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE
